UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DUSTIN HAYES, | ) | Case No. 5:17-CV-2035 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| DAVID W. GRAY[1], Warden, | ) | |
| Belmont Correctional Institution, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |

On September 20, 2017, Dustin Hayes ("Petitioner"), pro se, executed a petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was filed on September 27, 2017. ECF Dkt. #1. Petitioner requests for the Court to re-sentence him to a reduced 10 years imprisonment based upon alleged deficiencies in his life sentence and his plea agreement. ECF Dkt. #s 1, 9. On January 18, 2018, the Warden of the Belmont Correctional Institution ("Respondent") filed an Answer/Return of Writ. ECF Dkt. #7. On March 19, 2018, Petitioner signed a Traverse, which was docketed on March 28, 2018. ECF Dkt. #9. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice.

**I.      FACTUAL HISTORY**

The Ohio Eleventh District Court of Appeals set forth the facts of this case on direct appeal These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1);

---

[1] Michelle Miller was named as the original Respondent in the instant petition, but is no longer Warden of the Belmont Correctional Institution. David W. Gray is the current Warden of the Belmont Correctional Institution as of the date of this Report and Recommendation.

1

*Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999). As set forth by the Eleventh District Court of Appeals, the facts are as follows:

> {¶2} January 11, 2013, the Portage County Grand Jury returned an indictment in seven counts against Mr. Hayes. Each was for violation of R.C. 2907.02(A)(1)(b) and (B), alleging Mr. Hayes had engaged in a course of sexual conduct with a 12 year old girl between October 1, 2012, and December 31, 2012. At his arraignment [on] January 18, 2013, Mr. Hayes pleaded not guilty to all counts. Motion practice ensued. However, Mr. Hayes entered plea negotiations with the state. [On] June 12, 2013, he entered [into] a written plea of guilty to one charge of rape. A change of plea hearing took place that day. The trial court accepted the plea and nolled the remaining counts on motion of the state. Sentencing hearing went forward [on] September 9, 2013, with the trial court filing its judgment entry of sentence [on] September 13, 2013.

ECF Dkt. #7-1[2] at 71.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

On January 11, 2013, a Portage County Grand Jury issued an Indictment charging Petitioner with seven counts of Rape in violation of R.C. § 2907.02(A)(1)(b) & (B). ECF Dkt. #7-1 at 3-9. On June 12, 2013, Petitioner, with counsel, executed a written plea agreement whereby he pleaded guilty to count one of the Indictment, in violation of R.C. § 2907.02(A)(1)(b) & (B) and § 2971.03. *Id.* at 11-14. After holding a change of plea hearing, the trial court found that Petitioner knowingly, intelligently, and voluntarily entered into the plea agreement and accepted his plea, adjudging him guilty. *Id.* at 15-16, 117. The trial court also accepted the dismissal of the remaining counts charged in the Indictment. *Id.*

On September 6, 2013, Petitioner filed a sentencing brief. ECF Dkt. #7-1 at 17-18. Notably, "Counsel states both he and Mr. Hayes are aware that based upon the offense this Court must impose

---

[2] Citations to the State Court Record, ECF Dkt. #7-1, will refer to the .PDF page number rather than to specific exhibits.

a life sentence." *Id.* at 17. Since Petitioner's case is to be reviewed for parole by the State Board, counsel submitted the sentencing brief to help mitigate his sentence by submitting additional information for the record and by requesting a Pre-sentence investigation report to help Petitioner when his case is eligible for review by a parole board. *Id.* at 17-18.

On September 9, 2013, the trial court held a sentencing hearing. ECF Dkt. #7-1 at 19, 121-35. Subsequently, on September 13, 2013, the trial court issued an order, sentencing Petitioner "to an indefinite term of imprisonment of Ten Years to LIFE, to be served for the offense of 'Rape', or until such time as he is otherwise legally released. Defendant is eligible for parole after ten years." *Id.* at 20. Accordingly, the trial court designated Petitioner a Tier III Sex Offender. *Id.* at 22, 123.

### B.    Direct Appeal

Petitioner failed to file a timely direct appeal of his conviction and sentence. On July 13, 2014, Petitioner, pro se, executed a motion for leave to file a delayed appeal to the Eleventh District Court of Appeals, which was filed on July 21, 2014. ECF Dkt. #7-1 at 23-27. Petitioner also filed an accompanying memorandum in support. *Id.* at 28-32. On November 10, 2014, the appellate court dismissed Petitioner's appeal because he failed to comply with appellate and local rules. *Id.* at 33-36. On February 25, 2015, Petitioner filed a second motion for leave to file a delayed appeal, correcting his prior deficiencies. ECF Dkt. #7-1 at 37-41. On May 11, 2015, the appellate court granted his motion, reinstated his appeal on the docket, and appointed appellate counsel. *Id.* at 42-44.

Through counsel, Petitioner filed a brief , raising the following single assignment of error: "The Trial Court erred in failing to inform Appellant of the consequences of his plea pursuant to the Constitutions of the United States and the State of Ohio, as well as Crim.R.11." *Id.* at 46-57. The statement of issues also added the following:

3

> The Trial Court failed to inform Appellant that he had the right to remain silent at trial, could refuse to testify, and that his silence and refusal could not be commented upon at trial. Did the Trial Court not fail then to confirm he made his plea knowingly, intelligently, and voluntarily?

*Id.* at 49. On October 23, 2015, the State filed a brief in response. *Id.* at 59-69. On May 2, 2016, the appellate court found the single assignment of error was without merit, and, consequently, it affirmed the judgment of the trial court. *Id.* at 70-76.

### C. Ohio Supreme Court

On June 6, 2016, Petitioner, pro se, executed his Notice of Appeal and accompanying Memorandum in Support of Jurisdiction to the Ohio Supreme Court, both of which were filed on June 10, 2016. ECF Dkt. #7-1 at 77-90. Petitioner raised the following two propositions of law:

1. The sentence is contrary to law Ohio Revised Code 2907.02 and in violation of United States Constitutional Amenment[sic] Eight(8) Cruel and Unusual Punishment as a life sentence should not be imposed pursuant to Ohio Revised Code 2907.02 as there was no evidence of force: A life sentence is only allowable when the Defendant has been found guilty of Ohio Revised Code 2907.02(B) it is the element of force present in that section that increases the permittable[sic] penalty to life imprisonment.

2. The trial court erred in failing to inform Appellant of the consequences of his plea pursuant to the Constitutions of the United States and the State of Ohio, as well as Criminal Rule 11.

*Id.* at 84-87. The State did not file a response brief. On October 5, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *Id.* at 106.

### III. FEDERAL HABEAS CORPUS PETITION

Petitioner, pro se, executed the instant petition for a writ of habeas corpus on September 20, 2017, which was filed on September 27, 2017. ECF Dkt. #1. Petitioner raised the following grounds for relief and supporting facts:

1. GROUND ONE: The sentence is contrary to law [O.R.C.] 2907.02 Rape in violation of U.S. Constitutional Amendment Five, Fourteen-Due Process of

4

law and Eight Cruel and Unusual Punishment.

Supporting facts: Pursuant to [O.R.C.] 2907.02 Rape: (B) Whoever violates this section is guilty of rape, a felony of the first degree[.] If the offender did not cause serious physical harm to the victim, the victim was ten years of age or older, the offender has not been previously convicted of or pleaded guilty to a violation of this section, the court shall not sentence the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code. See Appendix B Letter from [B.T.][3] which states "I was the one who pursued sexual relations with Dustin". Appendix C "I was the one who asked to have sex". Appendix D Letter from [B.T.'s mother.] Appendix E Letter from [B.T's] step-father.

2.    GROUND TWO: The Trial Court erred in failing to inform Petitioner of the consequences of his plea pursuant to the Constitutions of the United States and the State of Ohio, as well as Criminal Rule 11. Therefore, the Trial Court failed to inform Petitioner made[sic] his plea knowingly, intelligently, and voluntarily.

Supporting facts: The Petitioner did not fully understand that he could receive both the minimum and maximum sentence when there was no force, no physical harm to the victim, he had never been convicted of any crimes[.] The Petitioner agrees that he voilated[sic] the law, but should have been sentenced to the 10 years, not the life sentence, because there was no force, and other than the age of the victim pursuant to Ohio Law, there was no force or rape, See Appendix B and C letters from the victim, [B.T.], that state the fact that the sex was her idea, and that neither of them considered the contact as rape. Clearly Dustin Hayes should only be sentenced to 10 years as to the nature of the crime involving no force or violence.

3.    GROUND THREE: The Petitioner's plea was not made knowingly, intelligently, and voluntarily.

Supporting facts: The Petitioner was unaware that by pleading guilty he would receive 10 years plus a life sentence, when there was no serious harm, no force, and pursuant to the victim's statements there was not even a rape. See Appendix B and C, letters from the victim, [B.T.].

*Id.* On January 18, 2018, Respondent filed an Answer/Return of Writ. ECF Dkt. #7. On March 19, 2018, Petitioner executed a Traverse, which was filed on March 28, 2018. ECF Dkt. #9.

---

[3] Petitioner names the victim in his petition. However, to preserve the confidentiality and privacy of this victim, the undersigned will replace the victim's name with his or her initials, B.T.

## IV.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. Justice O'Connor noted in *Daniels v. United States*: "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001) (citing *United States v. Olano*, 507 U.S. 725, 731 (1993)).

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B.     Exhaustion of State Remedies

Subject to the statute of limitations, federal habeas corpus relief is only available to persons that are in custody in violation of the United States Constitution, laws or treaties. 28 U.S.C. § 2254(a); *Engle v. Isaac*, 456 U.S. 107 (1982); *Smith v. Phillips*, 455 U.S. 209, 221 (1983). As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Wilson v. Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007). Exhaustion is required before a state prisoner may bring a habeas corpus petition under either 28 U.S.C. § 2241 or 28 U.S.C. § 2254. *See Collins v. Million*, 121 Fed.Appx. 628, 630-31 (6th Cir. 2005). The petitioner bears the burden of proving exhaustion. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Also, the court of appeals may raise and consider the issue of

6

exhaustion *sua sponte*. *Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) (citing *Harris v. Rees*, 794 F.2d 1168, 1170 (6th Cir. 1986)). Exhaustion does not require a state court adjudication on the merits of the claim at issue. *Clinkscale*, 375 F.3d at 438 (citing *Smith v. Digmon*, 434 U.S. 332, 333 (1978); *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990)).

The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts," which means "the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006) (citing *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Wilson v. Mitchell*, 498 F.3d 491, 498-99 (6th Cir. 2007); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). A petitioner will not be allowed to present claims never before presented in the state courts, unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991) (citing *Engle v. Isaac*, 456 U.S. 107 (1982) and *Murray v. Carrier*, 477 U.S. 478 (1986)).

In addition to full presentation, a claim must also be fairly presented to the state courts as a federal constitutional issue rather than merely as a state law issue. *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). To exhaust a claim, a petitioner must present it to the state courts under the same theory that it is later presented in federal court. *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). For a claim to be "fairly presented," the petitioner must assert both a factual and legal basis for his claim in state court.

*Fulcher v. Motley*, 444 F3d 791, 798 (6th Cir. 2006). A petitioner "fairly" presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (internal citation omitted); *McMeans*, 228 F.3d at 681 (citing *Franklin*, 811 F.2d at 326). Although general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated, a petitioner is not required to recite "book and verse on the federal constitution." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984)).

Originally, the Supreme Court interpreted 28 U.S.C. § 2254 as providing that if a petitioner did not fulfill the total exhaustion requirement, a district court *must* dismiss the habeas petition, even if it contained both unexhausted and exhausted claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 852 (1999) (emphasis added) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); *cf.* 28 U.S.C. § 2254(b)(2) (stating that "a[n] application for a writ of habeas corpus *may* be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") (emphasis added). However, the Supreme Court became concerned about petitioners losing their opportunity for federal review when the AEDPA, which was enacted in 1996, included a one-year statute of limitations. *See Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). Citing *Rhines*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a mixed petition

that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id*. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

*Harris v. Lafler*, 553 F.3d 1028, 1031-32 (6th Cir. 2009) (citing *Rockwell v. Yukins*, 217 F.3d 421, 425 (6th Cir. 2000)).

The AEDPA, as amended, provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C.A. § 2254(b)(2). Even assuming a state court remedy is available, the District Court may nevertheless consider a petitioner's unexhausted claim if the claim lacks merit and returning to state court "would amount to a mere futility." *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001); *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

### C.  Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed)). Absent either cause and prejudice or a finding of actual innocence, a federal court is not required to reach the merits of

claims that have been procedurally defaulted in state court by a state prisoner or in federal court by a federal prisoner in a defendant's direct criminal appeal. *See Reed v. Farley*, 512 U.S. 339, 354-55 (1994); *William v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006); *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005). Also, when the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). On the other hand, the Supreme Court has held that federal courts are not always required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). The Sixth Circuit has endorsed this view in *Hudson v. Jones* and proceeded to the merits in a habeas corpus proceeding when the question of procedural default presented a complicated question of state law and was unnecessary to the disposition of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *accord Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008), *as amended* (July 7, 2008).

In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735 (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)); *see also Harris v. Reed*, 489 U.S. 255, 262-63 (holding that the "plain statement" rule of *Michigan v. Long* applies to federal habeas review).

10

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418-20 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005), *vacated on other grounds in Bradshaw v. Richey*, 546 U.S. 74 (2005), *remanded to Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007); *Franklin*, 434 F.3d at 420. Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court

11

clearly addresses the claim, no procedural bar arises) (superseded by statute as stated in *Parker v. Matthews*, 567 U.S. 37 (2012) on different grounds); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply). Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Wilson v. Mitchell*, 498 F.3d 491, 499 (6th Cir. 2007); *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus, unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Geneva v. Lazaroff*, 77 Fed.Appx. 845, 850 (6th Cir. 2003); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) (Demonstrating "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986); *Geneva*, 77 Fed.Appx. at 850. A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750. The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup*, 513 U.S. at 321. Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). In addition, the Sixth Circuit recognized Ohio's rule that claims must be raised on direct appeal, if possible, or else res judicata bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry*, 226 N.E.2d 104, 108 (1967)). The above standards apply to the Court's review of Petitioner's claims.

## V.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the Act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see* ECF Dkt. #1. As previously stated, under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody

13

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the

language of 28 U.S.C. §2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct principle to the facts of the prisoner's case.

529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court

making the 'unreasonable application' inquiry should ask whether the state court's application of

clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term

"objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that application

must also be unreasonable." *Id.*; *see Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001);

*Earhart v. Konteh*, 589 F.3d 337, 343 (6th Cir. 2009).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA

limitations:

A.     Decisions of lower federal courts may not be considered.

14

B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.     The state court decision may be overturned only if:

       1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

       2.     the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

       3.     'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

       4.     the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted); *see Casnave v. Lavigne*, 169 Fed.Appx. 435, 438-39 (6th Cir. 2006).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

15

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic, primary, or historical facts, and not to mixed questions of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 107-12 (1995). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Id.*; *see McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) (citing *Thompson*, 516 U.S. at 111). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI.   LAW AND ANALYSIS

### A.   Ground One - Failure to Exhaust and Not Cognizable

The undersigned recommends that the Court find Petitioner did not meet the total exhaustion requirement for Ground One because the Ohio Supreme Court did not have a "full and fair opportunity" to rule on this ground for relief. Additionally, the undersigned recommends that the Court find that Ground One is not cognizable on federal habeas corpus review.

Petitioner failed to appeal the issue of his imposed sentence on direct appeal to the Eleventh District Court of Appeals. *See* ECF Dkt. #7-1 at 46-57. In fact, the first time Petitioner raised the constitutionality of his sentence was in his appeal to the Ohio Supreme Court. *Id.* at 84. In Ohio, exhaustion cannot occur where the appellant raised a claim for the first time in the Ohio Supreme

16

Court without having first presented it to the lower appellate court. *See State v. Phillips*, 272 N.E.2d 347, 352 (Ohio 1971). By not properly presenting Ground One to the appellate court, he consequently did not properly present this claim to the Ohio Supreme Court.

Petitioner's claim is also not cognizable because despite using federal constitutional language, Petitioner based Ground One solely on a perceived error of state law. "A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). This includes alleged errors of state sentencing laws. *See Dyson v. Tibbals*, 2014 WL 2890519, at *2-3 (N.D. Ohio June 25, 2014) (citing *Wilcox v. Littlefield*, 48 F.3d 1220, 1995 WL 98822, at *2 (6th Cir.1995)) (overruling petitioner's objection to being sentenced under O.R.C. §2907.02(A)(1)(b) because it is not cognizable on federal habeas review); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir.1987) ("The federal habeas court does not act as an additional appellate court to review a state court's interpretation of its own law or procedure."). Accordingly, the undersigned recommends that the Court find that Petitioner's Ground One regarding his sentence fails to meet the total exhaustion requirement and that it is not cognizable on federal habeas corpus review.

### B.      Grounds Two and Three - Without Merit

Grounds Two and Three are virtually identical because they contend that Petitioner's guilty plea was not made knowingly, intelligently, and voluntarily because he did not understand the type of sentence he would receive by pleading guilty. *See* ECF Dkt. #1 at 7-8. Therefore, the undersigned will address them together. Additionally, the undersigned notes that although the issues presented to the state courts and in the instant petition use virtually identical language and are based on the

17

adequacy of his plea, the underlying issue presented to the state courts was different than what is presented in the instant petition. Specifically, at the state appellate level, Petitioner argued that the trial court failed to adequately inform him of his right to remain silent at trial, could refuse to testify, and that his silence and refusal could not be commented upon at trial, and the appellate court addressed only those issues specifically raised. ECF Dkt. #7-1 at 46-56, 70-75. Whereas, in the instant petition, Petitioner asserts that he did not understand that he would face a life sentence. ECF Dkt. #1 at 7. Although an alternative ground for denying Grounds Two and Three in the instant petition may rest on procedural barriers, the virtually identical language of the assignment of error at the state levels and in the instant petition lead the undersigned to address the merits instead. ECF Dkt. # 7-1 at 49, 86;ECF Dkt. #1 at 7. For these two grounds of relief, the undersigned recommends that the Court find that they are without merit.

Petitioner contends that the reason his plea was not made knowingly, intelligently, and voluntarily was because he did not realize that he could receive the maximum penalty of life imprisonment, but rather thought he would only receive a term of imprisonment of 10 years. *See* ECF Dkt. #1 at 7-8; ECF Dkt. #9 at 5. He also stated that there was no force or violence involved in the commission of the crime, there was no physical harm to the victim, and that he had no prior convictions. ECF Dkt. #1 at 7. However, upon review of the written plea agreement and the transcript of the plea hearing, the undersigned recommends that the Court find that these two grounds are without merit. *See* 28 U.S.C. §2254(d).

A guilty plea is valid only if it is entered voluntarily, knowingly, and intelligently under the totality of the circumstances. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994) (citing *Brady v. United States*, 397 U.S. 742, 749 (1970)). In addition,

the Sixth Circuit has held that "for a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). Even after the AEDPA was enacted, courts in this district and circuit have held that the state bears the burden of proving that a guilty plea was voluntary, intelligent, and knowing, which can generally be satisfied if the state produces a transcript of the plea proceedings. *See Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004), *vacated in part on other grounds in Bradshaw v. Stumpf*, 545 U.S. 175 (2005); *Paige v. Moore*, No. 1:07CV969, 2008 WL 782587, at *6 (N.D. Ohio Mar. 24, 2008) (citing *Stumpf v. Mitchell*, 367 F.3d at 600); *McFarland v. Shewalter*, No. 1:10CV98, 2011 WL 7061924, at *16 (N.D. Ohio Dec. 9, 2011), *report and recommendation adopted sub nom. McFarland v. Clipper*, No. 1:10-CV-98, 2012 WL 124969 (N.D. Ohio Jan. 17, 2012). *But cf. Hartsook v. Miller*, No. 1:15-CV-598, 2016 WL 4926206, at *7 (S.D. Ohio Sept. 15, 2016), *report and recommendation adopted sub nom. Hartsook v. Warden, Belmont Corr. Inst.*, No. 1:15CV598, 2017 WL 395715 (S.D. Ohio Jan. 30, 2017), *aff'd sub nom. Hartsook v. Lazaroff*, No. 17-3339, 2018 WL 4772428 (6th Cir. Apr. 18, 2018) (noting that "*Bradshaw* and *Brady* are both pre-AEDPA cases, so a different standard of review was involved"). In the instant case, the State provided a full record, which includes not only the transcript of the plea hearing but also the written plea agreement itself. *See* ECF Dkt. #7-1 at 11-14, 107-20.

The first page of the written plea agreement contains a section entitled "Maximum Penalties" in bolded, underlined, and capitalized letters stating the maximum term was life in prison. ECF Dkt. #7-1 at 11. On the last page of the plea agreement, shortly above Petitioner's signature, it states:

> Defendant will enter a Plea of Guilty to Count #1 in the Indictment a Charge of RAPE, a Felony of the First Degree and shall be sentenced to LIFE in prison with the possibility of parole after ten years has been served, it is up to the parole board

> whether the Defendant EVER gets out of prison. Meaning he shall be sent to prison for a period of LIFE but can start asking to get out after 10 years has been served, pursuant to Ohio Revised Code 2971.03. Both sides free to argue later at any and all Parole Hearings for whatever they feel is appropriate.

*Id.* at 14. The trial court agreed to the recommendation in the plea agreement and sentenced

Petitioner "to an indefinite term of imprisonment of Ten Years to LIFE, to be served for the offense

of 'Rape', or until such time as he is otherwise legally released. Defendant is eligible for parole after

ten years." *Id.* at 20.

> During the plea hearing, the prosecutor addressed the trial court and stated the following:

> He [Petitioner] is going to enter a plea of guilty to Count One of the indictment, and that's a charge of Rape, a Felony of the First Degree, in violation of Section 2907.02(A)(1)(b). And then the sentencing provisions are in (B), and also Ohio Revised Code 2971.03.

> He understands that the maximum penalty, and the penalty he will receive, is a term of life in prison, as well as a Tier III Sex Offender Classification. That term of life in prison is governed by Section 2971.03, and it does enable him after ten years of serving a sentence to begin applying to the parole board.

> He understands through our plea negotiations that this is a life sentence. That it's up to the parole board if he ever gets out. He can start applying after ten years, but he falls under the parole board rules at the time. He can serve the rest of his life, it's been explained to him; he could get out after ten.

ECF Dkt. #7-1 at 108-09. Defense counsel replied that the prosecutor's summary was correct and

that:

> I've explained to my client [Petitioner] the impact of the plea negotiations he offered in the sentence. He was also offered a sentence of life – one – can plea to one count, life, and to do twenty years. He rejected that offer so he could begin to request to come home after serving ten years.

*Id.* at 109-10. Subsequently, the court addressed the Petitioner directly:

> THE COURT: Sir, have you been informed by your attorney and do you understand the nature of the charge to which you're pleading, which is Rape, a Felony of the First Degree?

20

THE DEFENDANT: Yes.

THE COURT: And, sir, do you understand, again, I will reiterate, I know Mr. Michniak [Prosecutor] put this on the record and Mr. Spears [Defense counsel] did as well, that that may come with it a term of life in prison, eligibility be reviewed by the parole authorities after ten years, but life in prison and up to a $20,000.00 fine and court costs and a Tier III Sex Offender Classification?

THE DEFENDANT: Yes.

*Id.* at 110-11. Later in the plea colloquy, the court reiterated that he would face a life sentence:

THE COURT: Sir, have you been promised, coerced, threatened in anyway into entering this plea?

THE DEFENDANT: No.

THE COURT: You're doing this of your own free will?

THE DEFENDANT: Yes.

THE COURT: And, sir, again, you've gone over the plea negotiations with Mr. Spears [Defense counsel], you understand this charge brings with it life in prison.

THE DEFENDANT: Yes.

THE COURT: And, again, you will be eligible for – to apply to the parole authorities after ten years.

THE DEFENDANT: Yes.

THE COURT: Okay. Do you accept those negotiations as your own, sir?

THE DEFENDANT: Yes.

THE COURT: Sir, you signed a written plea of guilty/waiver of rights document, it's about four pages long; is that correct?

THE DEFENDANT: Yes.

THE COURT: Did you sign this document voluntarily?

THE DEFENDANT: Yes.

THE COURT: Did you review every page of this document thoroughly with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions at all regarding anything on this document?

THE DEFENDANT: No.

*Id.* at 115-16. The prosecutor, defense counsel, and the trial court each discussed or emphasized that

Petitioner would face a life sentence. The clarity of the plea hearing transcript as well as the written

21

plea agreement itself evidence that Petitioner was, and should have been, aware of what type of sentence he faced. Accordingly, the undersigned recommends that the Court find that Petitioner's Grounds Two and Three are without merit because the his guilty plea was valid, as the record reflects that Petitioner was apprised multiple times of the fact that he could and would face a life sentence.

## VII.    RECOMMENDATION AND CONCLUSION

The undersigned recommends that the Court find that Petitioner has failed to exhaust Ground One of his habeas corpus petition and that Ground One also is not cognizable. Additionally, the undersigned recommends that the Court find that Grounds Two and Three of his habeas corpus petition are without merit. For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE: October 22, 2019                                      _/s/ George J. Limbert_____
                                                           GEORGE J. LIMBERT
                                                           UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).